# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 8, 2017          Decided November 17, 2017

No. 13-7060

EARNEST DURANT,
APPELLANT

v.

DISTRICT OF COLUMBIA GOVERNMENT,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00025)

———

*Anthony F. Shelley*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Michael J. Satin* and *Amelia D. Hairston-Porter*.

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: GARLAND, *Chief Judge*, WILKINS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellant Earnest Durant, Jr. filed a complaint in the District Court against his former employer, the District of Columbia Department of Corrections, claiming violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2012). Durant alleged that the Department of Corrections ("Department") retaliated against him for engaging in activities that were protected under Title VII and subjected him to a hostile work environment.

After the close of discovery, the District of Columbia ("District") filed a motion for summary judgment, contending, inter alia, that Durant's retaliation claims concerning employment actions taken prior to October 2007 were barred because there was nothing in the record to indicate that Durant had filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") or with the D.C. Office of Human Rights, as required by Title VII. *See id.* § 2000e-5(e)(1). The District also moved for summary judgment on Durant's retaliation claims based on employment actions taken after October 2007 and on his hostile work environment claims. The District Court granted summary judgment in favor of the District in full. *See Durant v. Dist. of Columbia*, 932 F. Supp. 2d 53 (D.D.C. 2013). Durant, acting pro se, filed a timely notice of appeal. This court appointed Miller & Chevalier as amicus curiae to present arguments in support of Durant.

We affirm the judgment of the District Court regarding Durant's retaliation claims relating to actions taken prior to October 2007. The District Court correctly found not only that Durant never responded to this portion of the District's motion for summary judgment but also that there was no evidence in

the record that Durant filed any charge of discrimination that would have rendered the claims timely. "[T]he burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case; the defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in [his] favor on one or more essential elements of [his] claim." *Grimes v. Dist. of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015). Because Durant failed to "present affirmative evidence" sufficient to show that a reasonable jury could return a verdict in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986), summary judgment for the District regarding the actions taken prior to October 2007 was proper.

We also affirm the District Court's grant of summary judgment for the District on Durant's remaining retaliation claims arising out of events occurring after October 2007. A reasonable jury could not infer from the proffered evidence that the challenged employment actions might have "dissuade[d] a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), or that the Department's legitimate, nonretaliatory reason for Durant's termination was a pretext for retaliation, *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). We further affirm the District Court's grant of summary judgment for the District on Durant's hostile work environment claims because there are no genuine disputes between the parties over the material facts that negate Durant's claims. Finally, we deny Durant's request to remand the case to the District Court to reopen discovery so that he can supplement the record with additional documents. Durant had ample opportunity during the trial court proceedings to obtain and present discovery in support of his claims, and he fails to explain how introduction of additional discovery would create

a genuine dispute of material fact sufficient to overcome summary judgment.

## I.  BACKGROUND

### A.  *Factual Background*

Earnest Durant, Jr. began his career with the Department in July 1983 and was subsequently terminated on July 2, 2010. During his tenure at the Department, Durant was promoted to the position of Criminal Investigator, DS-1811-11, with the Department's Warrant Squad, whose headquarters were located at 300 Indiana Avenue NW. The Warrant Squad was responsible for obtaining warrants for, locating, and apprehending individuals who had escaped, been erroneously released, or absconded from the Department's custody.

In the mid-1990s, Durant participated in a federal class action sexual harassment lawsuit against the Department. *See Neal v. Dir., Dist. of Columbia Dep't of Corr.*, Civ. A. No. 93-2420, 1995 WL 517248 (D.D.C. Aug. 9, 1995). The case was tried before a jury, which ultimately found in favor of the plaintiffs after determining that the defendants had engaged in a pattern and practice of sexual harassment and retaliation in violation of Title VII and 42 U.S.C. § 1983. *See id.* at *9. For purposes of this appeal, the salient employment actions began several years later, in mid-2007.

On June 14, 2007, Durant was placed on a two-month administrative leave pending the Department's investigation of allegations that Durant had used a Department Xerox copy machine for impermissible purposes and had permitted an unauthorized individual to enter the Warrant Squad's offices. Upon Durant's return to the Warrant Squad in August 2007, he was reassigned to work in a different building, the Office of

Community Corrections located at 1923 Vermont Avenue NW, separate from the Warrant Squad's headquarters. He was transferred back to the Warrant Squad's offices at 300 Indiana Avenue NW in June 2009.

On April 8, 2008, Durant's supervisor, Wanda Patten, issued Durant a "Letter of Admonition" for "specific deficiencies regarding [his] conduct and to warn [him] that future violations w[ould] result in corrective or adverse action." Appendix of Amicus Curiae ("A.A.") 493. According to the letter, on March 29, 2008 at approximately 9:45 p.m., a halfway house resident "escaped out of the front door of the facility." *Id.* Patten attempted to reach Durant on his Department-issued cell phone and left a message "informing [him] of the escape . . . and advising [him] to immediately respond." A.A. 494. Durant responded approximately nine hours later. *Id.* The Letter of Admonition advised Durant that because he was "the only investigator assigned to the Warrant Squad" at the time, he "should [have had] a heightened state of awareness concerning [his] response to all Warrant Squad incident notifications." *Id.*

A few months later, on August 12, 2008, Durant filed a formal charge with the EEOC. A.A. 110. The EEOC assigned a charge number to the case, No. 570200800315. *Id.* The charge alleged that from June 1999 to August 2008, Durant was adversely treated by his employer in retaliation for his "protected activity (i.e., [having been] a class member in [*Neal*])," which included being "stripped of [his] weapon on more than one occasion," "placed on limited duties," and "reassigned to another facility with little or no support." *Id.*

On October 6, 2009, the U.S. Department of Justice issued a written notice to Durant regarding "EEOC Charge Against District of Columbia Department of Corrections No.

570200800315." A.A. 496. The notice stated that, because "more than 180 days have elapsed since . . . the [EEOC] assumed jurisdiction over the charge and no suit based thereon has been filed by [the Department of Justice]," Durant had the right to pursue a civil action under Title VII against the Department within 90 days of receipt of the notice. *Id.* Durant then commenced the instant action on January 6, 2010.

Durant alleged additional claims of retaliation in a sworn EEOC charge dated March 6, 2010, including the previously described workplace grievances as well as the Department's suspension of his arrest authority, ongoing isolation, denial of promotions, and lack of access to a government vehicle. A.A. 347–50.

According to Durant, on May 25, 2010, the Department informed him that his position on the Warrant Squad was being eliminated and that he would be terminated on July 2, 2010. *See* Pl.'s Statement of Points and Authorities in Supp. of Opp'n to Def.'s Mot. Summ. J., Ex. J at 4. Durant's position – as well as the entire Warrant Squad – was eliminated pursuant to a District-wide Reduction in Force ("RIF") due to budgetary constraints. *See* A.A. 516–17. In total, the Department eliminated thirteen positions due to the RIF. A.A. 516. In August of that same year, Durant appealed the Department's RIF with the District of Columbia Office of Employee Appeals. *See id.*

Over the next several months, Durant continued to correspond with the EEOC. In a letter dated November 15, 2010, Durant described allegations of retaliation, discrimination, and hostile work environment in violation of Title VII. *See* A.A. 501–15. The letter alleged that the Department retaliated against him by failing to notify him of

job vacancies and giving preferential hiring treatment to other, less qualified Department employees.

On December 9, 2010, the EEOC provided a written acknowledgment of Durant's "correspondence dated November 15, 2010," which "raise[d] several incidents in 2010 you believe are retaliatory actions by the [Department] because you filed the previous EEOC Charge." A.A. 497. The EEOC informed Durant that it was "in the process of drafting a new EEOC Charge to address the most recent incidents of harm to you." *Id.* The letter also referred to an EEOC charge Durant filed "on or about August 12, 2009," and noted that the agency's investigation of that charge was closed on September 21, 2009. *Id.*

## B. *Procedural Background*

Durant filed his lawsuit pro se on January 6, 2010. He subsequently retained counsel who began representing him on January 17, 2011. *Durant*, 932 F. Supp. 2d at 62 n.8. In his original complaint, Durant sued several District of Columbia officials and various federal defendants, in addition to the District of Columbia. *Id.* at 61. For reasons not pertinent to this appeal, the trial court dismissed the claims against all of the defendants except the District. A.A. 179. In addition to the claims discussed below, Durant initially raised age and race discrimination claims, but he voluntarily withdrew those claims during the pendency of the litigation. *Durant*, 932 F. Supp. 2d at 62.

After receiving several extensions to amend his complaint, Durant filed a revised amended complaint on May 11, 2012, alleging, inter alia, that the District retaliated against him for his involvement in protected activities, including "prior participation in . . . EEO litigation, unfair labor complaints, and

prior and current union activity," and created a hostile work environment by "failing to provide him with due process or adequate responses in other proceedings, by terminating him through a fraudulent Reduction in Force, and by failing to place him in a new position in violation of Federal and District Priority Re-Employment Programs and Veteran's Preference Rights." Revised Am. Compl. 23.

Discovery closed on May 11, 2012 and the District filed a motion for summary judgment on July 13, 2012. With the assistance of counsel, Durant filed a memorandum in opposition to the District's motion for summary judgment on August 10, 2012. The District Court issued a Memorandum Opinion granting summary judgment in full. Durant, again acting pro se, filed a timely notice of appeal with this court.

In the proceedings before the District Court, the District challenged the court's subject-matter jurisdiction, alleging that the Collective Bargaining Agreement between the Department and its union and the D.C. Government Comprehensive Merit Personnel Act, D.C. CODE §§ 1-601.01–1-607.08 (2001), governed resolution of Durant's claims. *See Durant*, 932 F. Supp. 2d at 65–67. The District Court rejected these challenges to its subject-matter jurisdiction. *Id.* at 67. In their briefing to this court and during oral argument, the parties acknowledged that subject-matter jurisdiction is no longer in dispute. *See* Oral Arg. Recording at 1:48–2:08. We agree that the District Court properly exercised jurisdiction over this case. *See* 42 U.S.C. § 2000e-5(f)(3) (granting to the district courts jurisdiction over "actions brought under" Title VII). Because we have jurisdiction to review the lower court's decision, we will proceed to the merits. *See* 28 U.S.C. § 1291 (2012).

## II. ANALYSIS

### A. *Standard of Review*

We review the District Court's grant of summary judgment *de novo*. *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 575 (D.C. Cir. 2010). This court considers a motion for summary judgment anew, with no deference to the District Court's analysis. *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003). And, when appropriate, "we may affirm on any ground properly raised." *EEOC v. Aramark Corp.*, 208 F.3d 266, 268 (D.C. Cir. 2000). Summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a motion for summary judgment, we view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016). Summary judgment is warranted where the party bearing the burden of proof at trial fails to show a triable issue as to an essential element of that party's claim. *Arrington v. United States*, 473 F.3d 329, 335 (D.C. Cir. 2006).

### B. *The Claims on Appeal*

On appeal, amicus curiae, on behalf of Durant, contends that the District Court improperly granted summary judgment on Durant's claims concerning employment actions taken prior to October 2007 solely on the ground that Durant had not responded to, and therefore conceded, the District's argument that such claims were time-barred. Amicus curiae also alleges that the District Court erred in awarding summary judgment on Durant's remaining retaliation claims involving employment actions taken after October 2007, because genuine disputes of material fact existed as to whether the actions were materially

adverse and, with respect to Durant's termination, whether the Department met its burden of providing a legitimate, nonretaliatory reason for its decision. Amicus curiae also contends that, with respect to all of Durant's retaliation claims, the District Court improperly placed the burden on Durant to provide sufficient evidence to avoid summary judgment, rather than hold the District to its obligations as the movant to show the absence of a genuine dispute of material fact. In addition, amicus curiae claims that the District Court erred in granting summary judgment on Durant's hostile work environment claim. Lastly, Durant requests that this court remand the case to the District Court so that he can supplement the record with documents his trial counsel allegedly failed to enter into the record.

## C. *The Retaliation Claims*

Title VII makes it unlawful "for an employer to discriminate against [an employee] . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A separate provision of the statute extends Title VII protections to employees of agencies in the District of Columbia. *See id.* § 2000e-16(a); *Bundy v. Jackson*, 641 F.2d 934, 942 (D.C. Cir. 1981).

An individual alleging discrimination on the basis of retaliation must file a charge of discrimination with the EEOC "within [180] days after the alleged unlawful employment practice occurred," or within 300 days if the complainant "initially instituted proceedings with a State or local agency," such as the D.C. Office of Human Rights. 42 U.S.C. § 2000e-5(e)(1); *see Bethel v. Jefferson*, 589 F.2d 631, 635 (D.C. Cir.

1978) (stating that the D.C. Office of Human Rights is "the agency designated to entertain complaints of discrimination emanating from employment with the District of Columbia Government"). Charges must "be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). The charge serves the purpose of notifying the agency and the charged party of the complained of conduct, after which the agency is given time to consider the matter and notify the complainant of its decision whether to bring a civil action. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

### 1.   Employment Actions Taken Prior to October 2007

We begin with Durant's contention that the District Court erred in dismissing his claims that the Department unlawfully retaliated against him by: (1) placing him on administrative leave on June 14, 2007 after he permitted an unauthorized individual to enter the Warrant Squad's offices and made an impermissible use of the Department's copy machine, and (2) transferring him to a separate building away from the Warrant Squad's headquarters upon his return from administrative leave in August 2007. The District Court dismissed these claims and other actions taken against Durant prior to October 2007 because he failed to file any formal charges within the required 180- or 300-day statutory time limits. *See Durant*, 932 F. Supp. 2d at 64 & n.14.

Amicus curiae challenges this holding on several grounds. First, amicus curiae contends that the District Court violated Rule 56 by granting summary judgment solely on the ground that Durant failed to respond to the District's exhaustion argument. In support of this argument, amicus curiae cites this court's decision in *Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016), in which we held that "a motion for

summary judgment cannot be deemed 'conceded' for want of opposition," *id.* at 508. We made it clear that a District Court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.'" *Id.* at 509 (quoting Fed. R. Civ. P. 56(a)). The decision in *Winston & Strawn* is inapposite here.

In *Winston & Strawn*, the District Court failed to consider the merits of the matter in dispute and deemed the matter "conceded" on the sole basis that the non-moving party failed to meet the court's deadline for responding to the motion for summary judgment. *See id.* at 505–06 (stating that the District Court's order granting summary judgment "did not analyze any of the substance of [the] motion for summary judgment, nor did it purport to apply the standards of Rule 56," but rather "focused solely on [the nonmovant's] failure to file a timely response as the basis for summary judgment against him"). In contrast, the trial judge in this case adhered to Rule 56 by reviewing the entire record, assessing the merits of the District's argument, and stating its reasons for finding that there was no evidence to defeat the District's motion for summary judgment on timeliness grounds. *See Durant*, 932 F. Supp. 2d at 64 & n.14.

Second, in its reply brief, amicus curiae claims that even if the District Court properly considered the merits of the District's timeliness argument, the court failed to recognize that the District had the burden of proving the affirmative defense of untimely exhaustion of administrative remedies. *See* Amicus Reply Br. 6–8. This argument comes too late. During the summary judgment proceedings before the District Court, when Durant was represented by counsel, he never raised an argument that the District's position was infirm as a matter of

law because the District carried the burden of proving that Durant had failed to file any timely charges. *See Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1039 (D.C. Cir. 2003) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))). Moreover, we do not ordinarily consider an argument on appeal that is raised for the first time in a reply brief. *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 448 (D.C. Cir. 1996); *see McBride v. Merrell Dow and Pharms., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair . . . , but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)).

Finally, amicus curiae argues that the District Court committed an error of law by imposing on Durant the burden of presenting evidence in support of his retaliation claims rather than holding the District to its obligation, as the movant, to show its entitlement to summary judgment. According to amicus curiae, a party moving for summary judgment bears the burden to "show initially the absence of a genuine issue concerning any material fact," Amicus Br. 26 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970)), and "it makes no difference if the non-moving party fails to offer opposing evidence, or even to respond at all," *id.* at 25–26. This argument misstates the law and is contrary to the principles governing summary judgment. It is true that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the Supreme Court in *Celotex* clearly said:

> [W]e do not think the *Adickes* language . . . should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

*Id.* at 325; *see also Grimes*, 794 F.3d at 93 (explaining that "the burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case; the defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in [his] favor on one or more essential elements of [his] claim"). Summary judgment is warranted if the plaintiff has failed to "present affirmative evidence . . . to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257.

The record is clear that Durant did not present any evidence that he filed a formal charge with the EEOC or D.C. Office of Human Rights within the required 180- or 300-day time periods. *See* 42 U.S.C. § 2000e-5(e)(1). The earliest charge filed by Durant was date stamped on August 12, 2008, and was deemed filed with the D.C. Office of Human Rights and the EEOC as of that date, which was more than 300 days after the alleged retaliatory conduct that occurred before October 2007. *See* A.A. 110. Durant does not seriously contend otherwise on appeal, as the late 2007 unsworn correspondence he had with the Department's EEO coordinator and mentioned in the briefs was insufficient to constitute a charge. *See Fed. Exp. Corp. v.*

*Holowecki*, 552 U.S. 389, 402 (2008). Accordingly, we hold that because Durant provided no evidence that he timely filed a formal charge with the EEOC or the D.C. Office of Human Rights regarding his retaliation claims based on pre-October 2007 events, summary judgment in favor of the District on these claims was proper.

**2.     Employment Actions Taken After October 2007**

Durant's next set of claims pertain to allegedly retaliatory actions taken by the Department against him after October 2007. These actions include: (1) receiving a Letter of Admonition on April 8, 2008 from his supervisor, Patten, alleging that he failed to respond in a timely manner to a phone call regarding an emergency work situation; (2) denial of his request to use a government vehicle in or around May 2009; (3) ongoing isolation after being transferred back to the Warrant Squad's headquarters in June 2009; (4) Patten's order in February 2010 to cease making arrests until he could demonstrate his authority to do so; (5) denials of requests for promotion and lack of access to job vacancy announcements or preferential hiring in 2010; (6) the Department's decision to escort him from the building and place him on administrative leave while his termination was pending in May 2010; and (7) his termination due to the RIF, which was effective July 2, 2010.

Retaliation claims under Title VII are governed by the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of retaliation, a plaintiff must show that "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) the adverse action was causally related to the exercise of [his] rights." *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006). If

a prima facie case is shown, the burden shifts to the employer to provide a legitimate, nonretaliatory reason for its action. *Id.* at 901. If the employer provides a legitimate, nonretaliatory reason for its conduct, "the burden-shifting framework disappears" and the question becomes "'whether a reasonable jury could infer . . . retaliation from all the evidence,' which includes not only the prima facie case but also the evidence the plaintiff offers to 'attack the employer's proffered explanation for its action' and other evidence of retaliation." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (quoting *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)). In rebutting the proffered explanation, the plaintiff may show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation]." *Burdine*, 450 U.S. at 253.

Amicus curiae first contends that the District Court's order granting summary judgment to the District should be reversed because the court misapplied the evidentiary burdens set forth in *McDonnell Douglas*. In particular, amicus curiae argues that the court wrongly assessed whether Durant provided sufficient evidence that he suffered adverse actions rather than whether the District submitted evidence to prove that its actions were not materially adverse. Amicus Br. 33. This misstates the applicable legal framework for assessing Durant's claims. *McDonnell Douglas* places the initial burden on the plaintiff to establish a prima facie case of retaliation, the second element of which includes showing "that he suffered a materially adverse action by his employer." *Jones*, 557 F.3d at 677. At the prima facie stage, the defendant is under no obligation to present evidence proving that the challenged employment actions were not materially adverse. Only if the plaintiff makes an initial prima facie showing does the burden then shift to the defendant to articulate a legitimate, nonretaliatory reason for its action. *See id.* The District Court properly concluded that

Durant failed to make out a prima facie case because he had not submitted sufficient evidence – beyond his own conclusory assertions in his pleadings and summary judgment briefing – to show that many of the challenged actions actually occurred, let alone that they were materially adverse. *See Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993) ("[A] mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment." (internal quotation marks omitted)). For that reason, we will consider only the claims for which Durant pointed to evidentiary support: the Letter of Admonition, the lack of access to a government vehicle, suspension of his arrest authority, and his termination.

The parties do not dispute that Durant satisfied the first element of a prima facie case of retaliation by participating in the *Neal* sexual harassment lawsuit, filing EEOC charges, and commencing the instant action. *See* Amicus Br. 18–19; Appellee's Br. 17, 33, 54. The gravamen of the parties' dispute is whether Durant satisfied the second element – that is, whether the actions taken by the Department were materially adverse to Durant. *See* Amicus Br. 34–38; Appellee's Br. 27–49. The Supreme Court has clarified that, in the context of retaliation claims, materially adverse actions are "not limited to discriminatory actions that affect the terms and conditions of employment," *Burlington N.*, 548 U.S. at 64, but also include actions that might have "dissuade[d] a reasonable worker from making or supporting a charge of discrimination," *id.* at 57. Applying the *Burlington Northern* standard, we affirm the District Court's holding that only one of the challenged actions for which Durant provided supporting evidence – his termination in 2010 – rose to the level of a materially adverse action. We will consider the retaliation claims in turn, starting with the admonition letter.

We reject Durant's contention that a reasonable jury could find that his supervisor's issuance of a Letter of Admonition on April 8, 2008 constituted a materially adverse action. The letter merely informed Durant of "specific deficiencies regarding [his] conduct" in neglecting to respond in a timely manner to a phone call regarding an escapee and "warn[ed] [him] that future violations w[ould] result in corrective or adverse action." A.A. 493. A reprimand letter setting forth allegations of deficient work performance is not a materially adverse action absent a showing that the letter would have dissuaded a reasonable employee from engaging in protected activity. *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (finding that a letter of reprimand containing "job-related constructive criticism" but no "abusive language" was not materially adverse); *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (holding that an employee's negative evaluation and written warnings from her employer were "putatively disciplinary matters" that did not rise to the level of materially adverse actions).

Next, Durant's assertion that a reasonable trier of fact could find that the Department's refusal to assign him a government vehicle constitutes a materially adverse action also lacks merit. Durant's only evidence in support of this claim is a memorandum he wrote to Patten requesting that he be assigned a vehicle to perform his Warrant Squad obligations. A.A. 538–39. As the District Court correctly determined, Durant did not provide any evidence, beyond his own conclusory allegations, that his inability to access a vehicle "produce[d] an injury or harm," *Burlington N.*, 548 U.S. at 67, such as instances in which he could not complete a particular assignment, *Durant*, 932 F. Supp. 2d at 69.

We also reject Durant's claim that the Department's decision to suspend his arrest authority was a materially

adverse action. Durant contends that, on February 5, 2010, Patten ordered him to cease making arrests until he provided proof of his authority to do so. *See* A.A. 498–500. Assuming Durant's arrest powers were actually suspended, we find no merit in his claim that his supervisor's request for documentation regarding his authority to perform arrests was materially adverse. In *Baloch*, we held that an employer's requirement that an employee provide doctors' certificates when requesting sick leave was not materially adverse absent "evidence of any instances when the procedures led him to forgo leave." 550 F.3d at 1198. Durant has likewise failed to offer evidence that he was unable to perform his workplace obligations due to Patten's demand for proof of his arrest authority.

Finally, we consider Durant's claim that he was terminated in 2010 in retaliation for engaging in protected activities. We agree with the District Court that Durant's termination is the only action that rises to the level of a materially adverse action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (stating that adverse employment actions under Title VII include termination of employment). After reviewing the record, the District Court determined that the Department proffered a legitimate, nonretaliatory reason for its termination of Durant – namely, a District-wide RIF due to budgetary constraints. *See Durant*, 932 F. Supp. 2d at 72. This rationale, the District Court noted, was set forth in "the [Department's] response to [Durant's] appeal of the RIF before the [District's] Office of Employee Appeals," which Durant submitted as evidence in his case. *Id.* According to this document – which is a sworn statement of a Department representative – "the Department reviewed its programs and determined which functions would have the least negative impact on the Department's ability to perform its mandated functions" and determined that thirteen positions would be eliminated. A.A.

516. Amicus curiae contends that it was improper for the District Court to have identified this reason on its own in the evidentiary record, because it was the District's burden to assert the Department's reasons for termination through admissible evidence. Amicus Br. 40. We disagree.

A sworn statement by a Department official explaining the Department's reasons for eliminating Durant's position satisfied the Department's burden of "explaining clearly the [nonretaliatory] reasons for its actions." *Burdine*, 450 U.S. at 260; *see Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008) (holding that sworn depositions and documentary evidence sufficed to meet the employer's burden to produce a legitimate, nondiscriminatory reason for its conduct). Moreover, the District Court's reliance on this documentary evidence was not improper, as it is well-established that when considering a motion for summary judgment a District Court may "consider other materials in the record," Fed. R. Civ. P. 56(c)(3), beyond those "called to its attention by the parties," Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendment; *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008) ("When determining whether summary judgment or judgment as a matter of law is warranted for the employer, the court considers all relevant evidence presented by the plaintiff and defendant.").

Because the Department offered a legitimate, nonretaliatory explanation for Durant's termination, we "proceed[] to the ultimate issue of retaliation *vel non* instead of evaluating whether [Durant] made out a prima facie case." *Jones*, 557 F.3d at 678. On this point, the only question we must resolve is whether Durant has proffered evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext" for retaliation. *Burdine*, 450 U.S.

at 253. After careful review of the record, we conclude that the District Court properly determined that summary judgment was warranted because there is no genuine dispute as to whether the Department's reason for Durant's termination was pretextual. At numerous points in this litigation – including in his own deposition and response to the District's Statement of Undisputed Facts – Durant conceded that he was separated as a result of the RIF. *See* A.A. 303–04. *Compare* A.A. 258 (asserting that Durant's separation from employment was due to a RIF), *with* A.A. 427 (admitting the factual assertion that Durant's termination was due to a RIF). Given Durant's concession, a reasonable jury could not find that the stated reason for his termination was not the "actual reason," *Brady*, 520 F.3d at 495, or that a retaliatory reason "more likely motivated" the Department, *Jones*, 557 F.3d at 678 (quoting *Burdine*, 450 U.S. at 256).

Moreover, the only evidence Durant provided to support an inference of retaliation was the temporal proximity between his having filed the present action (on January 6, 2010) and his termination (for which he received notification on May 25, 2010). *See* Pl.'s Statement of Points and Authorities in Supp. of Opp'n to Def.'s Mot. Summ. J. at 33–34. Where, as here, an employer has provided a legitimate, nonretaliatory reason for its employment action, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanation[] [is] genuine." *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007)). Durant provided no such positive evidence. Accordingly, summary judgment on Durant's claim of retaliatory termination was proper.

**D.** *The Hostile Work Environment Claim*

We find no merit in Durant's hostile work environment claim. Title VII prohibits employers from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). A plaintiff pleading a hostile work environment claim must show that he was exposed to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). To assess a claim of hostile work environment, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In the proceedings before the District Court, Durant provided no evidence that he was subjected to "severe or pervasive" conduct by the Department. He failed to substantiate his contentions with evidence that, for example, he was "routinely subjected to isolation away from his colleagues," "continually subjected to threats to his employment [or] admonishments," and "denied equal pay and equal access to resources." Pl.'s Statement of Points and Authorities in Supp. of Opp'n to Def.'s Mot. Summ. J. at 38. And for several other challenged actions for which Durant offered evidentiary support – including the 2007 administrative leave and 2008 reprimand letter – the evidence suggests that such actions were taken not to "intimidat[e], ridicule, [or] insult" him, *Harris*, 510 U.S. at 21, but rather to address his deficient work performance. Accordingly, summary judgment on this claim was proper.

## E.   *Request to Remand the Case to Supplement the Record*

Finally, Durant requests that we remand the case to the District Court to permit him to submit new documents into the record. He alleges that his attorney – who represented him prior to and throughout the summary judgment proceedings, *see Durant*, 932 F. Supp. 2d at 62 n.8 – omitted to enter into the record "critical sworn depositions and affidavits, entire documents, [and] exhibits . . . in his possession," including depositions of "two individuals" who had "direct knowledge" of this case and previously represented Durant before the Department in "similar instances of allegations of retaliations" and were "co-complainants in other retaliatory complaints." Appellant's Br. 3–4. He asks that the case be remanded so that discovery can be "re-opened to allow re-introduction of th[e]se documents." *Id.* at 4. We deny this request.

The District Court provided Durant ample time to obtain discovery and present evidence in support of his claims. The court permitted Durant to amend his complaint twice and extended the discovery deadline four times. *See Durant*, 932 F. Supp. 2d at 62–63. The trial court also allowed Durant to file an expert report pursuant to Rule 26(a)(2)(B) "nearly five months after the close of discovery and over a year after the deadline for plaintiff to file expert reports." *Id.* at 63. There is no indication in the record that Durant filed a motion with the District Court requesting time for additional discovery under Federal Rule of Civil Procedure 56(d).

Similarly, on appeal, Durant did not move to supplement the appellate record pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C) or describe in his briefings the contents of the documents he alleges were in his attorney's possession but not entered into the record. Nor has he explained how the documents would have shown a genuine issue of material fact

sufficient to overcome summary judgment on any of his claims. Because Durant had a full opportunity to depose witnesses and obtain documents by discovery and has failed to explain to this court why additional discovery would be helpful, we deny his request to remand the case for supplementation of the record. *See Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 208 (5th Cir. 2001) (holding that because "[plaintiff] had ample opportunity to present evidence supporting her claims, but she failed to do so," there was "no reason to remand the case to reopen discovery").

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court with respect to Durant's retaliation and hostile work environment claims and deny Durant's request to remand the case to the District Court to reopen discovery.

*So ordered.*