# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-5220**

**September Term, 2021**

FILED ON: NOVEMBER 23, 2021

VALERIE KLINE,

      APPELLANT

v.

KIRAN AHUJA, IN HER OFFICIAL CAPACITY AS DIRECTOR OF U.S. OFFICE OF PERSONNEL MANAGEMENT,

      APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00262)

---

Before: KATSAS and JACKSON, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated in the memorandum accompanying this judgment, it is

**ORDERED** and **ADJUDGED** that the judgment of the district court be **AFFIRMED**.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed R. App. P. 41(b); D.C. Cir. Rule 41.

### Per Curiam

           **FOR THE COURT:**
           Mark J. Langer, Clerk

BY:    /s/
           Daniel J. Reidy
           Deputy Clerk

**M E M O R A N D U M**

Plaintiff-Appellant Valerie Kline has filed numerous employment discrimination lawsuits against the Office of Personnel Management ("OPM") over the past decade. *See, e.g.*, *Kline v. Berry*, 404 F. App'x 505 (D.C. Cir. 2010) (per curiam) ("*Kline I*"); *Kline v. Cobert*, No. 15-5226, 2016 WL 1272942, at *1 (D.C. Cir. 2016) (per curiam) ("*Kline II*"); *Kline v. Cobert*, No. 15-5248, 2016 WL 1272945, at *1 (D.C. Cir. 2016) (per curiam) ("*Kline III*"). In the instant case, Kline makes three claims under Title VII and the ADEA: (1) that OPM engaged in sex and age discrimination when it did not select her for a GS-13 Team Leader position (Count I); (2) that OPM diminished or eliminated certain of her regulatory duties in retaliation for her having engaged in the prior legal actions and related administrative proceedings (Count II); and (3) that OPM engaged in unlawful retaliation when, in 2008 and 2009, it took a series of disciplinary actions against her, including issuing a counseling memorandum, issuing an official reprimand, and suspending her over a weekend without loss of pay (Count III).

These claims relate to factual circumstances that are described briefly in Part I below. For the reasons discussed in Part II, we affirm the judgment of the district court granting OPM summary judgment with respect to each of Kline's claims.

**I.**

Kline began working at OPM in 2002 as a GS-12 Management Analyst in the Publications Management Group ("PMG"). She initially performed regulatory work, but in 2003 the description of her position was changed to include primarily non-regulatory duties. (Kline maintains that, notwithstanding this changed position description, she continued performing regulatory work until 2006.)

In August 2006, OPM advertised a GS-12 Management Analyst position with responsibility for primarily regulatory duties. Kline did not apply for that position. In October 2006, OPM hired Stephen Hickman to fill that new, primarily regulatory role. The following month, Jacquline Carter, who had been the GS-13 Team Leader, retired. At that time, Hickman was not qualified to serve in the GS-13 role, as he was not yet eligible for the higher GS-13 grade. Kline contends that OPM nevertheless "unofficially and unlawfully placed Hickman" into that position. Appellant Br. 4.

In November 2008, OPM advertised the GS-13 Team Leader position, which had responsibility for managing the Regulatory Issuance System and serving as the Liaison between OPM and the Federal Register. Kline and Hickman applied. The selection official, Claudio Benedi, stated that Hickman was the "clearly superior candidate," based in part on Hickman's superior "knowledge of the regulatory process" and his "experience working at the Federal Register prior to joining OPM." Benedi Aff., J.A. 176.

Around the same time, Kline was assigned some regulatory work, which she had not done since at least 2006. In particular, on September 8, 2008, Kline's supervisor, Donna Lease, assigned

Kline responsibility for reviewing and processing Federal Register notices. However, approximately four months later, in January 2009, Kline was informed that she would be reviewing only "routine" notices from that point forward, and, in July 2009, she was informed that she would no longer be assigned regulatory work at all. Kline contends that when she asked Lease why she was no longer being assigned regulatory work, Lease responded that "Claudio [Benedi] wants you out of here so you won't be doing regulatory work anymore." Appellant Br. 7.

Meanwhile, Kline's relationship with OPM was deteriorating, and the agency took three disciplinary actions against her. First, in January 2008, OPM issued Kline a counseling memorandum after she engaged in a heated argument with Lease. Then, in June 2008, Lease issued Kline an official reprimand for failure to follow instructions in connection with Kline's attempts to coordinate training for coworkers after Lease had admonished her not to do so. Finally, in March 2009, OPM suspended Kline for either one or two days (the parties disagree) over a weekend, without loss of pay, after an episode involving Kline sending an office-wide email that Lease interpreted as "pok[ing] fun" at another PMG staff member by asserting authority over him, which Lease viewed as "disruptive" to office operations. Lease Aff., J.A. 182–83.

The district court granted summary judgment on all counts to OPM.

## II.

This court reviews orders granting summary judgment de novo. *See, e.g.*, *Chandler v. Berlin*, 998 F.3d 965, 971 (D.C. Cir. 2021). "We view the evidence in the light most favorable to the party opposing summary judgment, draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations." *Thompson v. District of Columbia*, 967 F.3d 804, 812–13 (D.C. Cir. 2020). Summary judgment is appropriate if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Chandler*, 998 F.3d at 971 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). For the reasons explained below, we conclude that the district court correctly determined that no reasonable jury could return a verdict in Kline's favor.

### A. With One Possible Exception, Kline Has Failed To Demonstrate That The Challenged Actions Were Materially Adverse

Kline claims OPM retaliated against her by diminishing and ultimately eliminating her responsibility for reviewing regulatory notices. To the extent that this claim relies on OPM eliminating certain of Kline's responsibilities in 2006, we have considered it before, *see Kline II*, 2016 WL 1272942, at *1, and we reject it again now for the same reasons. As to the aspect of this claim that relates to the agency's decision to remove certain regulatory assignments from Kline's portfolio in 2009, Kline has not established that handling those assignments was a core part of her duties such that removal constituted a "significant" diminishment of her responsibilities. *See Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007).

Kline further claims that the three challenged disciplinary actions were retaliatory. Under our

settled precedent, the counseling memo and official reprimand do not qualify as adverse actions. *See, e.g.*, *Durant v. District of Columbia*, 875 F.3d 685, 698 (D.C. Cir. 2017) (finding no material adversity resulting from a "Letter of Admonition" that "merely informed [the plaintiff] of specific deficiencies regarding his conduct . . . and warned him that future violations would result in corrective or adverse action" (internal quotation marks omitted)). This court has yet to decide whether a brief suspension that does not result in loss of pay is materially adverse, but we need not reach that question here, because even if it is, the record is devoid of evidence that retaliation was the motivation for any of the actions taken against Kline, including the suspension, as we explain below.

### B. Kline Has Failed To Provide Sufficient Evidence To Permit A Reasonable Jury To Conclude That OPM's Actions Were Motivated By Discrimination Or Retaliation

We agree with the district court's finding that there is simply no record evidence that would support a reasonable inference of discrimination or retaliation in this case.

With respect to Kline's contention that OPM discriminated against her by engaging in an elaborate scheme to disadvantage her in relation to Hickman when she applied for the Team Leader position (Count I), Kline "has not brought forth even a shred of evidence" that OPM's alleged maneuvering had anything to do with her age or sex. *Kline v. Weichert*, No. 1:16-cv-262, 2020 WL 2615528, at *6 (D.D.C. May 23, 2020). Nor has she provided evidence that she was "significantly better qualified for the job" than Hickman was, as she must do if she seeks to "directly challenge [her employer's] qualifications-based explanation." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008).

The record is also devoid of any evidence that Kline's repeated filing of complaints with the EEOC was the impetus behind OPM's elimination of her regulatory duties, its issuance of the counseling memorandum and official reprimand, or the brief suspension it imposed (Counts II and III). Although Kline points to several comments that her supervisors made stating that they wanted her to leave OPM, the comments at issue fall far short of raising the specter of unlawful retaliation for protected activity. And Kline fails to provide any other evidence that would permit a reasonable jury to conclude that whatever animosity may have existed toward her was based on her EEO complaints, rather than some other reason.

\* \* \*

In sum, none of the OPM actions that Kline challenges qualify as adverse actions under Title VII or the ADEA, except perhaps her suspension without loss of pay. But we do not need to evaluate whether that disciplinary action was materially adverse because, even if it was, Kline fails to provide evidence that would permit a reasonable jury to conclude that any of the various acts that OPM engaged in were motivated by either discriminatory or retaliatory intent.

We have considered Kline's remaining arguments on appeal and find them meritless. Thus, we affirm the district court's grant of summary judgment to OPM on all counts.